UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT TURBEN,

    Plaintiff,

    v.                             CAUSE NO.: 3:19-CV-141-JD-MGG

ROBERT CARTER, et al.,

    Defendants.

OPINION AND ORDER

Robert Turben, a prisoner without a lawyer, filed a complaint alleging he received inadequate medical treatment while housed at the Indiana State Prison. More specifically, he alleges that he received inadequate care for a toe injury and his diabetes. In his complaint, Turben sues eight defendants: Commissioner Robert Carter, Superintendent Ron Neal, Wexford of Indiana, LLC, Dr. Nancy Marthakis, and Nurses Lacey, Dan, Michelle, and Elizabeth for compensatory and punitive damages and for injunctive relief. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . .." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pursuant to 28 U.S.C. § 1915A, this court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. "In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a

federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

Turben alleges that, on December 15, 2017, he injured his right foot, which caused it to swell and turn blue. Turben requested treatment and was told he would be seen by a medical provider. However, after 19 days, he still had not received treatment. After his unit team manager contacted Wexford a second time, Dr. Nancy Marthakis, a Wexford doctor, treated Turben on January 3, 2018. He told her he had been icing his foot and had a great deal of pressure on the big toe of his right foot. Turben was prescribed crutches, but the crutches were taken away in February. He continued to have difficulty walking and could not put pressure on his foot, which caused him to walk on his heal. After about a week, he could not take the pain and was again placed on crutches for a three-week period. Six days later, Turben reinjured his toe and was placed on crutches a third time. He had x-rays of his right foot and, on May 7, 2018, was diagnosed with a bi-partite sesamoid bone - a split in the bone of his big toe. Turben, however, states he did not find out about this diagnosis until October 24, 2018, while he was undergoing physical therapy. Because he continued to have pain in his right foot and big toe, he was prescribed Pamalor. That medication caused him to have nightmares and did not alleviate his pain. He alleges he remains in pain every day and has not yet received adequate care for his injury.

Turben further alleges that in May of 2018 he received inadequate medical care when a member of Wexford's medical staff changed his insulin prescription to a different type of insulin even though he told the medical staff he previously "had a lot

2

of trouble" with the new insulin and his "body would not accept" it. Because of the insulin change, Turben was hospitalized for four days and given an insulin drip. However, when he returned to the prison, Wexford medical staff once again gave him the insulin that had made him sick even though the doctor treating Turben at the hospital recommended Wexford change his insulin. Turben was hospitalized a second time and hospital doctors once again recommended his insulin be changed. It is unclear from the complaint whether Turben was again given the insulin that made him sick, but he does not report any problems regarding his insulin.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from

3

accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). However, "[n]egligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to show that a defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Even incompetence does not state a claim of deliberate indifference. *Walker v. Peters*, 233 F.3d 494 (7th Cir. 2000). Furthermore, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

With respect to Commissioner Carter and Superintendent Neal, Turben has not alleged they were personally involved in his medical care. A lawsuit against an individual pursuant to § 1983 requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). Furthermore, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these individuals cannot be held liable simply because they oversee operations at the prison or supervises other correctional officers. *See Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009). Accordingly, Commissioner Carter and Superintendent Neal will be dismissed.

Turben also names Wexford, the private company which provides medical care at the prison, as a defendant. Here, Turben is attempting to hold Wexford liable because it employs the medical staff. However, Wexord is not vicariously liable for the actions of its employees under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others civil rights."). Because Turben's complaint against Wexford appears to be based only on Wexford's medical staff's decisions related to his care for his right foot injury and changes in his prescribed insulin, Wexford will be dismissed as a defendant.

Turben alleges that Dr. Marthakis and Nurses Lacey, Dan, Michelle, and Elizabeth were deliberately indifferent to his medical needs relating to his foot injury and change in his insulin prescription. However, Turben's complaint does not explain in detail what each of these defendants did that he believes makes them liable to him. In other words, Turben has not sufficiently connected the dots as to how each of these defendants participated in the alleged inadequate medical treatment of his foot injury and change in his insulin prescription. Therefore, Turben has not stated a claim of deliberate indifference with regard to Dr. Marthakis or any of the nurses.

Lastly, Turben alleges that Wexford did not follow IDOC guidelines. But, failure to follow prison guidelines does not amount to a constitutional violation. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices.").

5

While the complaint does not state a claim, Turben will be afforded an opportunity to replead his claims. *Luevano v. WalMart Stores, Inc.*, 722 F.3d 1014, 1022-23, 1025 (7th Cir. 2013); *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006). In the amended complaint, he should explain in his own words what happened, when it happened, where it happened, who was involved, and how he was personally injured, providing as much detail as possible.

For these reasons, the court:

(1) DIRECTS the clerk to place this cause number on a blank Prisoner Complaint (INND Rev. 8/16) and send it to Robert Turben;

(2) GRANTS Robert Turben until **May 13, 2019**, to file an amended complaint on that form; and

(3) CAUTIONS Robert Turben that if he does not respond by that deadline, this case will be dismissed without further notice pursuant to 28 U.S.C. § 1915A because the current complaint does not state a claim.

SO ORDERED on April 8, 2019

                                            /s/ JON E. DEGUILIO
                                            JUDGE
                                            UNITED STATES DISTRICT COURT