UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| ROBERT TURBEN, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:19-CV-141-JD-MGG |
| | ) | |
| ROBERT CARTER, et al., | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Robert Turben, a prisoner without a lawyer, filed an amended complaint alleging he has received inadequate medical care for a foot injury and his diabetes while housed at the Indiana State Prison. ECF 7. In his amended complaint, Turben sues seven defendants: Commissioner Robert Carter, Superintendent Ron Neal, Wexford of Indiana, LLC, Dr. Nancy Marthakis, Pamela Williams, Nurse Lacey, and Nurse Dan for compensatory and punitive damages and for injunctive relief. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . .." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pursuant to 28 U.S.C. § 1915A, this court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. "In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006).

In his amended complaint, Turben alleges that, on December 15, 2017, he injured his right foot, which caused it to swell and turn blue. ECF 7 at 2. Turben requested treatment for his injury and, on January 3, 2018, Dr. Nancy Marthakis, a Wexford doctor treated him. *Id*. Because his foot was throbbing with pain and felt like it was "on fire," Dr. Marthakis ordered x-rays of his foot. *Id*. Turben was prescribed crutches, but his crutches were taken away in February 2018, because he was told the prolonged use of crutches would cause cysts under his armpits. *Id*. However, Turben states that neither Dr. Marthakis nor Wexford checked his armpits to see if he was developing cysts. *Id*. Without the use of crutches, Turben had difficulty walking and could not put pressure on his foot, which caused him to walk on his heal. *Id*. He was prescribed crutches for another twenty-one days but Wexford again took the crutches away from him stating that prolonged use of crutches would cause him to develop cysts. *Id*. In total, Turben alleges he was prescribed crutches on four occasions; however, each time they were taken away from him, he experienced significant pain walking. *Id.* at 2-3.

Turben next asserts that Dr. Marthakis told him that the "only thing wrong with [his] foot" was his "neuropathy, arthritis, or bone degeneration" and he is overly sensitive to pain. ECF 7 at 3. But Turben was diagnosed with a bi-partite sesamoid bone—a split in the bone of his big toe—from x-rays taken on May 7, 2018. *Id.* He claims a Wexford physical therapist told him that if his bone does not heal, surgery may be necessary. *Id*. Furthermore, he asserts that he was having difficulty with the medication Pamelor, but Dr. Marthakis refused to change it. *Id*. at 6. He claims that, after making

2

twenty-eight requests to change Pamelor, Dr. Marthakis finally discontinued it. *Id*. In sum, he asserts that for the past eighteen months, he has been in constant pain every day and Dr. Marthakis's treatment plans have failed to heal his right foot. As a result, he has yet to receive adequate care for his foot injury.

Turben further alleges that, in May of 2018, he received inadequate medical care when Wexford medical staff changed his insulin prescription to a different type of insulin even though he told the medical staff he previously had a lot of trouble with the new insulin. ECF 7 at 3. Here, he alleges he tried to send Wexford a health care request form explaining his situation but never received a response from Wexford. *Id*. He alleges that when he took the new insulin, it caused him to vomit, become light-headed and occasionally fall down. *Id*. at 3-4. Because of the insulin change, Turben was hospitalized for four days and given an insulin drip. *Id*. at 4. However, when he returned to the prison, Wexford medical staff once again gave him the insulin that had made him sick even though the doctor treating Turben at the hospital sent an order for Wexford to change his insulin. *Id*. After taking the incorrect insulin for a number of days, he became sick in his cell and an emergency signal was called. *Id*. at 4-5. However, Turben alleges Dr. Marthakis cancelled that signal without seeing him. *Id*. at 5. The prison guard then called a second emergency signal and Dr. Marthakis tried to clear the signal a second time again without seeing Turben. *Id*. After Dr. Marthakis finally saw Turben, he was sent to the hospital and placed in the intensive care unit for three days. *Id*. at 4-5.

Under the Eighth Amendment, inmates are entitled to adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer*, 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008).

Accepting Turben's allegations as true and giving him the benefit of the inferences to which he is entitled, as the court must at this stage of the proceedings, he has alleged facts from which it can be inferred that Dr. Marthakis was deliberately indifferent to his serious medical needs by refusing to provide him with appropriate

4

care for his right foot injury and associated pain, and by refusing to respond to Turben's medical emergency promptly prior to his second hospitalization.

As to Commissioner Carter and Superintendent Neal, Turben has not alleged they were personally involved in his medical care. A lawsuit against an individual pursuant to § 1983 requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). Furthermore, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and these individuals cannot be held liable simply because they oversee operations at the prison or supervise other correctional officers. *See Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009). Accordingly, Commissioner Carter and Superintendent Neal will be dismissed.

Turben next alleges that Nurse Pamela Williams improperly backdated paperwork stating that he was "cheeking" his medication instead of swallowing it. ECF 7 at 5. He asserts that the "cheeking" incident took place on February 27, 2018, but Williams backdated the paperwork to show that it took place on February 11, 2018. *Id*. Turben claims he did not "cheek" his medication and the camera evidence would show he took it using one hand while holding his crutches in his other hand. *Id*. He asserts that if he did "cheek" his medication and not swallow it, IDOC policy mandates that a conduct report be issued. *Id*. at 5-6. It is unclear why Turben is suing Nurse William; however, failure to follow prison guidelines does not amount to a constitutional violation. *Scott v. Edinburg* 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983

5

protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Because Turben has not stated a claim against Nurse Williams, she will be dismissed.

Turben has also named Wexford, the private company which provides medical care at the prison, as a defendant. Here, Turben is attempting to hold Wexford liable because it employs the medical staff. However, Wexford is not vicariously liable for the actions of its employees under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("[A] private corporation is not vicariously liable under § 1983 for its employees' deprivations of others civil rights."). Because Turben's complaint against Wexford appears to be based only on Wexford's medical staff's decisions related to his care for his right foot injury and changes in his prescribed insulin, Wexford will be dismissed as a defendant.

Turben also names Nurse Lacey and Nurse Dan as defendants in the caption of his case. However, he does not mention either of these defendants in his amended complaint. Because Turben has not articulated his basis for why he is suing Nurse Lacey and Nurse Dan, they will be dismissed.

Lastly, Turben has filed a motion seeking a preliminary injunction. ECF 8. In his motion, he asks this court to allow him to be seen by a podiatrist and have an MRI to evaluate the extent of the damage to his right foot. However, the court will defer ruling on the motion for preliminary injunction until Dr. Marthakis has filed her declaration in response to this request and Turben has an opportunity to reply.

For these reasons, the court:

(1) GRANTS Robert Turben leave to proceed against Dr. Nancy Marthakis in her individual capacity for compensatory and punitive damages for deliberate indifference to his serious medical needs by refusing to provide him with appropriate care for his right foot injury and associated pain, and by refusing to respond to Turben's medical emergency promptly prior to his second hospitalization, in violation of the Eighth Amendment;

(2) GRANTS Robert Turben leave to proceed against Dr. Nancy Marthakis in her official capacity for injunctive relief to provide Robert Turben with adequate medical care for his right foot injury, as required by the Eighth Amendment;

(3) DISMISSES Commissioner Robert Carter, Superintendent Ron Neal, Wexford of Indiana, LLC, Pamela Williams, Nurse Lacey, and Nurse Dan;

(4) DISMISSES all other claims;

(5) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Dr. Nancy Marthakis at the Indiana Department of Correction with a copy of this order and the complaint, pursuant to 28 U.S.C. § 1915(d);

(6) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), that Dr. Nancy Marthakis respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order; and

(7) ORDERS Dr. Nancy Marthakis to file her declaration in response to Robert

Turben's motion for preliminary injunction along with her answer.

SO ORDERED on July 22, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT